[Cite as *In re Change of Name of J.W.B.* , 2011-Ohio-1640.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE:

CHANGE OF NAME OF:

 J.W.B.

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Sheila G. Farmer, J.
Hon. Patricia A. Delaney, J.

Case No. CT10-0038


O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Muskingum County Court of Common Pleas, Probate Division, Case No. 20097038 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | March 30, 2011 |
| APPEARANCES: | |

For Appellant

ERIC ALLEN
The Law Office of Eric J. Allen, LTD
713 South Front
Columbus, Ohio 43206

For Appellee

COLE GERSTNER
Gottlieb, Johnston Beam & Dal Ponte, PLL
320 Main Street
P.O. Box 190
Zanesville, Ohio 43702-0190

*Hoffman, P.J.*

{¶1}   Appellant Sean Beck appeals the July 1, 2010 Judgment Entry entered by the Muskingum County Court of Common Pleas, Probate Division, which granted a change of name of the minor child J.W.B. to J.L.M., upon application of Appellee Britton Moore, the child's Mother.

STATEMENT OF THE FACTS AND CASE

{¶2}   Appellant and Appellee were married on June 14, 2002.  One child was born as issue of said union, to wit J.W.B. (DOB 6/27/05).  The parties were divorced via Decree filed on May 12, 2009.  Pursuant thereto, Appellee was designated the residential parent and legal custodian of the minor child.  The trial court found Appellant had committed grievous misconduct and engaged in criminal conduct.  The trial court did not award any parenting time to Appellant.  The issue of parenting time was revisited in 2010, and the trial court again denied Appellant's request for parenting time, finding such was not in the best interest of the child.  At the time of the filing of the divorce and throughout the proceedings, Appellant was incarcerated as a result of a series of police corruption and drug charges.  Appellant ultimately received a twenty year sentence, and is currently incarcerated in California.  He is not scheduled to be released until 2025.

{¶3}   On September 23, 2009, Appellee filed an Application for Change of Name of Minor pursuant to R.C. 2717.01.  Appellant filed an objection to the application. The trial court conducted a hearing on May 24, 2010.

{¶4}   At the hearing, Appellee testified Appellant's last physical contact with their child was on October 1, 2007.  Appellant was arrested later that same day on

federal drug charges, and has been continuously incarcerated since that day. Appellant's last contact with J.W.B. was a phone conversation on August 20, 2008. Appellee stated she filed for divorce on October 16, 2007, after learning what Appellant had done. Appellee indicated Appellant was in federal prison, and not due to be released until March, 2025. When asked to describe what Appellant had done to her and J.W.B., Appellee stated she and her son had lost their home and a vehicle. Appellee added she was unable to begin to explain the financial aspect of what had been lost by Appellant's actions. Appellee learned from the FBI Appellant had taken J.W.B. with him during the commission of a drug deal. Appellant has not paid any child support except for $800.00 he had on his person on the day of his arrest. Although Appellant has over $18,000.00, in his Ohio Police and Fire Pension, she has not received any of those monies.

{¶5} When asked why she petitioned to have J.W.B.'s name changed, Appellee explained her name was restored to her maiden name pursuant to the divorce decree and she wanted J.W.B. and herself to have the same last name. Further, the name change would be the same last name as his maternal grandparents with whom Appellee and J.W.B. were residing.

{¶6} Appellee indicated prior to Appellant's arrest she did not believe J.W.B. had any contact with his paternal grandparents. However, she later learned Appellant would take the child to paternal grandparents' home during the mornings when Appellee was at work. Appellee explained J.W.B. had little contact with his paternal grandparents because Appellant did not like his upbringing and did not want to put his own child in the

same situation. Appellant had told Appellee his parents were mentally and verbally abusive as well as manipulative.

{¶7} Appellee stated she did not believe the name change would have any effect on the relationship between J.W.B. and Appellant as Appellant had not been part of the child's life for the past two and one-half years. J.W.B. has always identified himself as being part of Appellee's family. Appellant had chosen this as well as he was very close with Appellee's parents prior to his arrest. Appellee was aware of at least fifty articles printed in various newspapers regarding Appellant's criminal activities. Appellee recalled an incident between J.W.B. and one of his preschool classmates who told J.W.B. he was not allowed to play with him because his father was in jail. The comment greatly upset J.W.B. Appellee feared these types of incidents will continue as J.W.B. got older.

{¶8} Appellee described J.W.B. as "doing wonderfully", growing, learning and playing sports. When Appellant was first arrested, he would call J.W.B. from the Franklin County Jail. Appellee would force J.W.B. to talk with Appellant. As time went on, J.W.B. reacted more and more to the phone calls, and the conversation between father and son became shorter and shorter. J.W.B. would not want to speak with Appellant, running into another room whenever the phone rang. Appellee also explained she wished to change the child's middle name from "William", which is Appellant's middle name, to "Lee", which is her father's name. Appellee stated her father has been more of a father to J.W.B. than Appellant.

{¶9} Paternal grandfather, William Beck, stated he had not had any meaningful contact with J.W.B. since the child was about one and one-half years old. Paternal

grandmother, Mala Beck, testified she had limited contact with J.W.B. prior to October, 2007. Mrs. Beck stated she and her husband were not always included in all the holiday functions, but tried to include Appellant, Appellee and J.W.B. She noted Appellant, Appellee and J.W.B. sometimes accepted their invitations, and other times they would attend only for a portion of the time. Mrs. Beck explained they had tried to send gifts and cards to J.W.B., but such had been returned. On cross-examination, she stated she and her husband had not filed anything to seek grandparent visitation.

{¶10} Appellant testified via telephone conference call. Appellant indicated he took J.W.B. to see paternal grandparents on holidays and family birthdays. Appellant indicated, at one point, he was taking the child to see his grandparents at least once a week. Appellant explained, after he was incarcerated in October, 2007, his only contact with J.W.B. was by telephone. He added he sent his son cards and letters as often as he could. Appellant stated the last time he talked with J.W.B. was in August, 2008. Appellant noted the letters and gifts he had sent since being housed in federal prison in California have all been returned or refused. Appellant testified he was unaware, until the day of the hearing, monies in his Ohio Police and Fire Pension had not been transferred as child support. As a federal prisoner, Appellant is permitted to have telephone and written communications including email with his son.

{¶11} When asked why he wanted J.W.B. to keep his last name, Appellant explained J.W.B. was his only son and he wished his surname and family history to continue. Appellant stated Appellee has been "threatening" to change J.W.B.'s name since shortly after his arrest. Appellant was unaware Appellee also intended to have J.W.B.'s middle name changed until the day of the hearing. Appellant indicated he

wants to maintain a relationship with his son despite his incarceration. Appellant believes he can foster the relationship given the opportunity to have contact with J.W.B. On cross-examination, when asked whether he himself had tarnished the Beck legacy, Appellant answered he did not believe he tarnished the last name, but made a mistake and was paying for it.

{¶12} After hearing all the evidence and taking the matter under advisement, the trial court granted Appellee's application for name change via Judgment Entry filed July 1, 2010.

{¶13} It is from this judgment entry Appellant appeals, raising as his sole assignment of error:

{¶14} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING THE PETITION TO CHANGE THE CHILD'S NAME FROM [J.W.B.] TO [J.L.M]."

I

{¶15} In his sole assignment of error, Appellant maintains the trial court abused its discretion in granting Appellee's petition to change the child's name from J.W.B. to J.L.M.

{¶16} Name changes for minors are governed by R.C. 2717.01. The standard for deciding whether to permit a name change is "proof that ... the facts set forth in the application show reasonable and proper cause for changing the name of the applicant." R.C. 2717.01(A); *In re Willhite,* 85 Ohio St.3d 28, 30, 1999-Ohio-201. In determining whether a reasonable and proper cause for a name change has been established, a court must consider the best interest of the child. *Id.* at 32. A probate court's determination of whether a proposed name change should be granted will only be

reversed if it constitutes an abuse of discretion. *In re Change of Name of Barker,* 155 Ohio App.3d 673, 2003-Ohio-7015, ¶ 8, citing *In re Crisafi* (1995), 104 Ohio App.3d 577, 581. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶17} In determining the best interest of the child, the trial court should consider the following factors: 1) the effect of the change on the preservation and development of the child's relationship with each parent; 2) the identification of the child as part of a family unit; 3) the length of time that the child has been using a surname; 4) the preference of the child if the child is of sufficient maturity to express a meaningful preference; 5) whether the child's surname is different from the surname of the child's residential parent; 6) the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; 7) parental failure to maintain contact with and support of the child; and 8) any other factor relevant to the child's best interest. *Bobo v. Jewell* (1988), 38 Ohio St.3d 330, paragraph two of the syllabus.

{¶18} A probate court's determination of whether a proposed name change should be granted will only be reversed if it constitutes an abuse of discretion. *In re Change of Name of Malott,* Brown App.No. CA2006-02-005, 2006-Ohio-7024, ¶ 6, citations omitted. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**{¶19}** In the case sub judice, the trial court held an evidentiary hearing and conducted a de novo review of Appellee's application. The testimony reveals J.W.B. has had no recent contact with Appellant or his paternal grandparents. Paternal grandparents did not have a strong relationship with J.W.B. before Appellant's arrest. The matter has only disintegrated. Although Appellant maintains he can foster a relationship with J.W.B. through telephone contact, the record reveals J.W.B. reacts negatively whenever the telephone rings and hides to avoid speaking with Appellant. Appellant is not scheduled to be released from prison until March, 2025. For his entire childhood, J.W.B. will be forced to explain why he and Appellee have different last names.

**{¶20}** Upon review of the record, we find the trial court duly considered the relevant factors, and we conclude the court did not abuse its discretion in permitting the name change.

**{¶21}** Appellant's sole assignment of error is overruled.

{¶22}  The judgment of the Muskingum County Court of Common Pleas, Probate

Division, is affirmed.

By: Hoffman, P.J.

Farmer, J.  and

Delaney, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ Sheila G. Farmer_____
HON. SHEILA G. FARMER


s/ Patricia A. Delaney_____
HON. PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE:

CHANGE OF NAME OF:

J.W.B.                                          :
                                                :
                                                :
                                                :
                                                :
                                                :        JUDGMENT ENTRY
                                                :
                                                :
                                                :        Case No. CT10-0038


     For the reasons stated in our accompanying Opinion, the judgment of the

Muskingum County Court of Common Pleas, Probate Division, is affirmed.  Costs

assessed to Appellant.


                                      s/ William B. Hoffman_____
                                      HON. WILLIAM B. HOFFMAN


                                      s/ Sheila G. Farmer_____
                                      HON. SHEILA G. FARMER


                                      s/ Patricia A. Delaney _____
                                      HON. PATRICIA A. DELANEY